IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KIMBERLY-CLARK WORLDWIDE, INC., and
KIMBERLY-CLARK GLOBAL SALES, LLC,

                Plaintiffs,                  OPINION AND ORDER

v.                                           14-cv-502-wmc

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SERVICES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

                Defendants.

---

This is a patent infringement lawsuit between plaintiffs Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC (collectively "K-C") and defendants First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC (collectively "First Quality"). Before the court is defendants' motion to transfer venue to the Green Bay Division of the Eastern District of Wisconsin. (Dkt. #8.) This court will grant defendants' motion because (1) there is *no* inconvenience to plaintiffs in transferring this matter 40 miles northeast of their Neenah location rather than keeping it 100 miles southwest; and (2) Judge Griesbach's familiarity with the parties, the technology, a related patent, and the prior art all weigh strongly in favor of transfer and provide a sound basis for upsetting any deference otherwise due plaintiffs' choice of forum.

BACKGROUND[1]

K-C has a principal place of business in Neenah, Wisconsin, where it employs approximately 3,500 people. (Declaration of Vicki Margolis ("Margolis Decl.") (dkt. #16) ¶ 3.) Many of those employees work on product research, development, testing, and marketing for K-C's personal care business "segment." (*Id*.) That segment includes the K-C's Pull-Ups® brand. (*Id*. at ¶ 4.) First Quality, on the other hand, has no offices, facilities, or employees in Wisconsin and manufactures its "private label" disposable training pants in Lewistown, Pennsylvania. (Declaration of Moshe Oppenheim ("Oppenheim Decl.") (dkt. #11) ¶ 4.)

The parties here recently engaged in litigation on a related patent in the Eastern District of Wisconsin before Judge William C. Griesbach. On September 21, 2009, after First Quality announced its plan to launch a refastenable training pant, K-C filed suit in the Green Bay Division of the Eastern District of Wisconsin alleging infringement of several patents. One of those patents was the '067 Patent. (Declaration of Matthew J. Duchemin ("Duchemin Decl."), Ex. 1 (dkt. #10-1).) The patent asserted in this case, the '379 Patent, is a continuation of the '067 Patent. (Compl., Ex. 1 (dkt. #1-1).) The '379 Patent also has the same inventors, specifications and drawings, as well as similar claims to the '067 Patent. (*Compare* Compl., Ex. 1 (dkt. #1-1), *with* Duchemin Decl., Ex. 1 (dkt. #10-1).)

Judge Griesbach held an evidentiary hearing on the '067 Patent on November 16-

---

[1] In deciding a transfer motion, the court may rely on the material allegations in the complaint, as well as statements in the affidavits submitted by the parties. *Heller Fin., Inc. v. Midway Powder Co., Inc.*, 883 F.2d 1286, 1293-94 (7th Cir. 1989).

17, 2009. (Duchemin Decl., Ex. 2 (dkt. #10-2) ¶ 3.) On December 11, 2009, he denied K-C's motion for a preliminary injunction, finding that there was "substantial merit to First Quality's defense that Claims 8-10 of the '067 patent are obvious in light of Lancaster, Van Gompel and Kling." (*Id.* at ¶ 32.) Judge Griesbach also held a *Markman* hearing on January 12, 2011, to construe certain claim terms of the '067 Patent. (Duchemin Decl., Ex. 3 (dkt. #10-3).) Specifically he construed three phrases used in Claim 8 of the '067 Patent -- "refastenable pant," "extending from the waist opening to each leg opening," and "partially encircle." (*Id.* at pp.4-9.). Finally, Judge Griesbach granted First Quality's summary judgment motion, finding that the '067 Patent was invalid because K-C's own prior art recognized the identical problem -- namely, permanently bonded seems and the ensuing difficulty of removing the pants in the event of an accident -- and taught the identical solution -- namely, a refastenable seam -- as the '067 Patent more than a decade earlier. (Duchemin Decl., Ex. 4 (dkt. #10-4).)

K-C appealed that ruling to the Federal Circuit, and the Federal Circuit recently affirmed Judge Griesbach's summary judgment ruling "that all the asserted claims of U.S. Patent No. 8,849,067 are invalid." (Not. of Suppl. Authority (dkt. #43).)

OPINION

Under 28 U.S.C. § 1404(a), a district court may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district . . . where it might have been brought." Decisions regarding transfer of patent actions are governed by the law of the circuit where the district court sits. *Winter Int'l Royalty Corp.*

3

*v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000). In the Seventh Circuit, transfer is proper where the moving party demonstrates that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

The first two factors are pretty straightforward here. The parties do not dispute that venue and jurisdiction are proper in both the Eastern and Western Districts of Wisconsin. As for the third factor, 28 U.S.C. § 1404(a) "permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Unlike in most patent cases filed in this district, this flexible standard strongly favors transfer here.

I. **Plaintiff's Choice of Forum**

The court's convenience analysis generally begins with deference to the plaintiff's choice of forum. Two lines of reasoning underlie this deference. The first is a hesitance on the part of courts to deprive the plaintiff of its forum choice. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))). This consideration is

4

found nowhere in 28 U.S.C. § 1404, but rather is inherited from common law *forum non conveniens* considerations. *Id.* Still, deference due plaintiff's choice of forum is softened somewhat for purposes of a transfer analysis. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. [That] is not to say . . . that the plaintiff's choice of forum is not to be considered [in a § 1404(a) transfer analysis], but only that the discretion to be exercised is broader.").

The second reason for deference converges with the court's convenience analysis in recognizing that the plaintiff has expressed its opinion about what forum is most convenient by filing suit there. Following this second line of reasoning, courts generally give less deference to the plaintiff when the selected forum is not its home or the situs of material events. *See U.S.O Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 752 (7th Cir. 2008) ("The more tenuous a party's relation to the forum, the weaker its case [is] for litigating there."); *see also Ledalite Architectural Prods v. Focal Point L.L.C.*, No. 09-cv-394-slc, 2008 WL 4615784, at *2 (W.D. Wis. Oct. 16, 2008) ("The idea behind such deference is that it is reasonable to assume that a plaintiff files suit in its home forum for its convenience; not so for a foreign plaintiff.").

First Quality argues that K-C's choice of forum is entitled to no weight because the Western District of Wisconsin is not K-C's home forum, pointing out that K-C's closest connection is with the Eastern District of Wisconsin. (Defs.' Br. (dkt. #9) 5.) *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("[A] foreign plaintiff's choice

5

deserves less deference."). K-C responds, however, that "Madison is just as much a 'home forum' to K-C as Green Bay." (Pls.' Opp'n (dkt. #15) 6.) In fact, both courthouses are within 100 miles of K-C's principal place of business in Neenah, Wisconsin, where K-C has thousands of employees. While it is true that Neenah is not technically within the boundary of the Western District, K-C resides in Wisconsin and in close proximity to this District. Thus, while the Western District is not K-C's official home district, this district is a close second. As such, K-C's choice of forum is still entitled to meaningful deference.

## II. Convenience to the Parties and Witnesses

Convenience to the parties and witnesses is, in many cases, another name for proximity to the principle sources of proof. *See Harley Davidson, Inc. v. Columbia Tristar Home Video, Inc.*, 851 F. Supp. 1265, 1270 (E.D. Wis. 1994) ("Private interest considerations include . . . the situs of material events and the relative ease of access to sources of proof in each forum.") Often the home forum is more convenient for the plaintiff because documents and witnesses are located nearby or at least are more readily accessible from plaintiff's home forum than other likely venues. Here, these considerations are essentially neutral and do not overcome the deference due K-C's original choice of forum.

### A. Parties

In patent cases such as this, the principal sources of material proof are likely to be technical and legal documents in the possession of scientists and attorneys, and the

6

principle sources of testimony are likely to come from experts. *Illumina Inc. v. Affymetrix, Inc.*, No. 09-cv-277-bbc, 2009 WL 3062786, at *3 (W.D. Wis. Sept. 21, 2009) ("In patent lawsuits, where experts and lawyers end up playing the starring roles, mention of 'witnesses' and 'records' in a given district carries minimal weight."). This makes it hard to see how the location of the court will have a significant impact on the course of discovery or even trial. This court, and even more importantly the Seventh Circuit, has repeatedly recognized in recent years that "technological advancements have diminished traditional concerns related to ease of access to sources of proof and the cost of obtaining witnesses." *Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden.").

  First Quality argues that K-C will not be inconvenienced if the case is transferred to Green Bay, because it is K-C's home forum. First Quality also points out that K-C has not only brought several cases in the Green Bay Division of the Eastern District of Wisconsin, but has also sought transfer there. However, K-C is entitled to disregard its *own* inconvenience in favor of other factors when choosing a forum. *U.S. Water Servs., Inc. v. Nozozymes A/S*, No. 13-cv-864-bbc, 2014 WL 2604997, at *3 (W.D. Wis. June 11, 2014). Thus, because neither the Western District of Wisconsin nor the Eastern District of Wisconsin is First Quality's home forum, and First Quality does not argue that litigating this action in Green Bay would be more convenient than litigating it in

Madison, this consideration alone is insufficient to disturb K-C's choice of forum.

Even if convenience to K-C were relevant, according to Google Maps, the difference in time it takes to drive from K-C's principal place of business in Neenah, Wisconsin, to this courthouse in Madison and the time it takes to drive from K-C's principal place of business to the federal courthouse in Green Bay, Wisconsin, is about one hour. (Declaration of Matthew P. Becker ("Becker Decl."), Ex. 3 (dkt. #17-3).) It takes about 45 minutes to drive from K-C's principal place of business in Neenah, Wisconsin, to the federal courthouse in Green Bay. It takes about one hour and 45 minutes to drive from K-C's principal place of business in Neenah, Wisconsin, to this courthouse in Madison. While the uncertainties of winter weather, construction and commuter traffic may add to this difference, it still does not inconvenience either party to such a degree that K-C should be deprived of its choice of forum. *See Ledalite Architectural Prods.*, 2008 WL 4615784, at *3 ("[T]he approximately 140-mile ride to Madison from Chicago is not a huge difference in the context of a patent infringement suit.").

### B. Witnesses

Convenience to third-party witnesses is yet another consideration. Certainly, traditional concerns surrounding the cost of obtaining the attendance of witnesses have been diminished by technological advancements, but the location of non-party witnesses remains an important factor for witnesses who may not testify at trial without being compelled by a subpoena from the forum court. *See Milwaukee Elec. Tool Corp.*, 392 F. Supp. 2d at 1064 ("Live testimony cannot be compelled when third-party witnesses are

8

distant from the forum court", and, "[a]ccordingly, the existence of such witnesses is frequently an important consideration in a transfer motion analysis.").

First Quality argues that the "Green Bay Court will unquestionably have subpoena power over employees at K-C's Neenah headquarters and former employees residing in the surrounding areas." (Defs.' Br. Supp. (dkt. #9), 7.) However, so will this court. Not only is Neenah in Wisconsin, it is less than 100 miles from Madison. *See* Fed. R. Civ. P. 45(c)(1)(A) & (B). As such, this consideration is neutral and also does not support disturbing K-C's choice of forum.

III. Interests of Justice

"The 'interests of justice' is a separate component of a § 1404(a) transfer analysis," which may be determinative and demand a decision contrary to the analysis of the convenience factors. *Coffey*, 796 F.2d at 220. Traditionally, this analysis relates to the "efficient administration of the court system," requiring consideration of such factors as: (1) "docket congestion and likely speed to trial;" (2) "relative familiarity with the relevant law;" (3) "respective desirability of resolving controversies in each locale;" and (4) the relationship of each community to the controversy." *Research Automation*, 626 F.3d at 978. The court, consistent with the parties, focuses on the first two factors.

A. Time to Trial

Generally, the relative speed with which an action may be resolved is an important consideration when selecting a venue. *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). As this court has noted before, "[s]wift resolution can be particularly

9

important in patent cases because delay might frustrate a patent holder's rights and the value of its patent." *E2Interactive, Inc. v. Blackhawk Network, Inc.*, No. 09-cv-629-slc, 2010 WL 3937911, at *4 (W.D. Wis. Oct. 6, 2010). Here, however, the difference in time to trial between this court and that of Judge Griesbach is likely minimal.

The Western District generally boasts a much shorter median time to trial at 18.8 months for the 12 month period ending March 31, 2014, than does the Eastern District at 33.1 months for the same time period. (Becker Decl., Ex. 1 (dkt. #17-1).) However, these statistics are somewhat misleading. In calculating the median time to trial, all cases before all judges in each respective district are considered. From this perspective, were one to compare the median time-to-trial numbers for Judge Griesbach specifically with those of this court, the numbers would likely be similar. (*See* Defs.' Reply (dkt. #25) 7-8.) Moreover, while the numbers alone neither weigh in favor or against transfer to the Eastern District of Wisconsin, as discussed below, Judge Griesbach's knowledge and familiarity with the closely related '067 Patent may allow for a faster time to trial than the parties would otherwise receive in this court.

B. **Judicial Economy**

As an initial matter, there is no longer a concern that this court and Judge Griesbach might be simultaneously deciding the same "secondary considerations" of non-obviousness, since the Federal Circuit recently affirmed Judge Griesbach's summary judgment ruling. (Not. of Suppl. Authority (dkt. #43).) Even so, Judge Griesbach's familiarity with the parties, their experts, a related patent, the prior art, and the alleged infringing product or products weighs strongly in favor of transfer, as does avoiding any

10

subtle inconsistency in the approach taken by the Federal Circuit and Judge Griesbach with regard to prior art and obviousness.

As noted at the outset of this opinion, the patent at issue here ('379) and the related patent previously litigated before Judge Griesbach ('067) have the same inventors, drawings, and specifications. (*Compare* Compl., Ex. 1 (dkt. #1-1), *with* Duchemin Decl., Ex. 4 (dkt. #10-4).) Thus, "[a]t a minimum, these cases involve the same parties, same products, similar components, and a [large] degree of overlapping technology." *Nokia Corp. v. Apple Inc.*, No. 10-cv-249-wmc, slip op. at 11 (W.D. Wis. Jan. 5, 2011) (granting motion to transfer). "When such is the case, it is to the parties' benefit to litigate before a judge that is familiar with the products and general technology." *Id.*

While transferring this case to the Eastern District of Wisconsin would take advantage of Judge Griesbach's overall familiarity, K-C is right to point out that the subject matter involved here is far less complicated than that of other patent cases. K-C also argues that "[t]his case involves a different patent, with substantially different claims, and a different [First Quality] product than was previously adjudicated in Green Bay" and that "both this Court and the Green Bay court will need to expend comparable resources to review the newly issued patent-in-suit and its file history to address claim construction issues unique to K-C's new patent." (Pls.' Opp'n (dkt. #15), 10-11.) The court finds this argument unpersuasive for at least three reasons.

First, some of the claims of the '379 Patent use identical language to that used in the '067 Patent to describe the components of the refastenable training pant. For example, the first claim of the '379 Patent reads:

11

> A training pant for use in training a child to use the toilet, comprising:
>
> <u>an absorbent chassis defining a longitudinal axis, a transverse axis, an overall length dimension parallel to the longitudinal axis, front and back waist edges parallel to the transverse axis, opposite side edges extending between the front and back waist edges, a front waist region contiguous with the front waist edge, a back waist region contiguous with the back waist edge, and a crotch region which extends between and interconnects the front and back waist regions</u> . . . .

(Compl., Ex. 1 (dkt. #1-1) (emphasis added).) The first claim of the '067 Patent reads:

> An absorbent article, comprising:
>
> <u>an absorbent chassis defining a longitudinal axis, a transverse axis, front and back waist edges parallel to the transverse axis, opposite side edges extending between the front and back waist edges, a front waist region contiguous with the front waist edge, a back waist region contiguous with the back waist edge, and a crotch region which extends between and interconnects the front and back waist regions</u> . . . .

(Duchemin Decl., Ex. 1 (dkt. #10-1) (emphasis added).) While the specific terms construed by Judge Griesbach in Claim 8 of the '067 patent do not appear to be terms used in the '379 patent, his familiarity with the refastenable pant may aid in his construction of the fastening system disclosed in Claims 1, 25, 30 and 33 of the '379 patent.

Second, while K-C argues that both courts will have to spend a comparable amount of time and resources reviewing the '379 patent and its file history, a glance at the references cited in the '379 patent undermines K-C's argument. The references cited in the '379 patent include *dozens* of references to documents filed in the Eastern District action, including citations to several of Judge Griesbach's orders. (Compl., Ex. 1 (dkt. #1-1) 4-7.) His familiarity with the issues raised by the parties in the prior action and his rulings on those issues will provide him a leg up in gaining familiarity with the '379

patent.

Third, in concluding that the '067 patent was invalid, Judge Griesbach also gained familiarity with the prior art -- both products previously sold by K-C and patents by other inventors. (Duchemin Decl., Ex. 4 (dkt. #10-4).) In light of the Federal Circuit's recent affirmance of his summary judgment decision, Judge Griesbach's understanding of the prior art may lead to certain efficiencies in considering an invalidity challenge. More importantly, Judge Griesbach is in a far better position to insure that rulings on subtle issues of prior art and obviousness are treated in a manner consistent with his now affirmed approach.

After considering all relevant factors under 28 U.S.C. § 1404(a), therefore, the court is satisfied that the interests of justice clearly weigh in favor of transferring this case to the United States District Court for the Eastern District of Wisconsin.

ORDER

IT IS ORDERED that First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC's motion to transfer venue to the Green Bay Division of the Eastern District of Wisconsin (dkt. #8) is GRANTED.

Entered this 19th day of November, 2014.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge